IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

29b 9
17ap613

## VAN DEUSEN and others *vs.* YOUNG.

The provisions of the statute "Of trespass on lands," (2 *R. S.* 338, § 1,) were not intended exclusively for the benefit of persons having a present estate in possession.

Remaindermen in fee may maintain an action, under the statute, for an injury to the inheritance, by cutting timber; and the fact that there is a subsisting estate for life in another person presents no insuperable obstacle to such action.

What cases, upon the merits, or judged by the intrinsic character of their facts, are embraced within the statute.

Where a contract for the sale and purchase of land is made, under which the purchaser enters into possession of the premises, and cuts wood and timber thereon, and the contract is subsequently terminated without a consummation by deed, and it does not appear whether it was put an end to by mutual consent, or mutual fault, or which party committed the fault, the parties are remitted to their original rights, and an action may be maintained, under the statute, for the injuries done to the inheritance by the purchaser.

An objection on account of the nonjoinder of a person as plaintiff, must be presented by demurrer or answer.

Joint owners of land, deriving their title from a common ancestor, together

represent the estate which their ancestor had, in his lifetime; and for an injury to their common property, where the damage is common to all, they may maintain a joint action.

In an action for an injury to the inheritance, by cutting wood and timber, evidence of the comparative value of the premises with or without the wood and timber, is admissible as furnishing an appropriate criterion of damage, after a proper foundation has been laid by showing the acquaintance of the witness with that species of property.

THIS was an appeal by the defendant from a judgment rendered in February, 1856, in favor of the plaintiffs, upon the report of a referee. The plaintiffs are the devisees and heirs at law of Lawrence Van Deusen, late of Albany county, deceased, and the defendant was the vendee, under a contract of sale, of the farm of said Van Deusen. Such contract was made between the defendant and Mary Van Deusen as the executrix of her deceased husband, but there was in his will no power of sale conferred upon the executrix. Lawrence Van Deusen died in October, 1853, having first made a will by which he appointed his wife Mary executrix, and gave her a life estate in the premises, and devised the estate in remainder to his son, Lawrence Van Deusen, jun., one half thereof, and to his daughters, Mrs. Hungerford and Mrs. Hendrickson, the other half, to be equally divided between them. Mrs. Hendrickson died intestate and without issue, and her brothers and sister inherited her share of the farm. Soon after the death of the husband, and on the 31st of October, 1853, Mary Van Deusen, as executrix, contracted to sell the farm to the defendant for the price of $3000, $2000 payable on the 1st of May then next, and $1000 to be secured by mortgage upon the premises. The deed was to be " a good and sufficient quit-claim deed for the conveying to him the fee simple of the said premises, free from all incumbrances except rents to accrue after the 1st of April, 1854, to S. Van Rensselaer." Lawrence Van Deusen, jun. one of the children, was cognizant of this contract—a subscribing witness thereto; and in reply to some question put to him at the time of the making of the contract, alleged that his mother had power to

Van Deusen *v.* Young.

sell. No such authority, however, was given by the will. The contract further provided that the defendant should have *immediate possession* of the lower part of the house, and also privilege to do what work he might deem fit or necessary to be done on the farm, provided he could get possession thereof of one Adam J. Long, who held it under an article of agreement till the 1st of April, 1854. This the defendant succeeded in doing, and went into possession, began clearing a part of the premises, cut off the wood from a swale, to the extent of some 80 cords—there being but about six acres of wood land on the premises, originally, as claimed by the plaintiffs. On the 1st of May, 1854, when the deed was to be delivered, difficulties arose between the parties. The widow and executrix tendered a quit-claim deed, signed by herself and the children of Lawrence Van Deusen. The defendant objected to taking it, on the ground that there was a considerable amount of unpaid rent; that the premises were liable to be sold for an unpaid subscription by the deceased to the stock of a plank road company; that there were judgments unsatisfied of record against Lawrence Van Deusen, jun. which were a lien on the premises, and an unsettled bond executed by him, liable to be satisfied thereout. The widow then procured to be prepared and executed a warranty deed of the premises, and tendered the same; offered to indemnify the defendant against all liabilities and incumbrances, and assured him that the rent, (except a small portion which would be forthwith discharged) and the judgments, were paid. High words ensued between them; the defendant declined to accept the title or indemnity; the bargain fell through, and the defendant vacated the premises. The plaintiffs then brought this action to recover the damages resulting to the premises from the cutting of the wood and timber before referred to, and claimed to recover treble damages, under the provisions of the statute entitled "Of trespass on lands." The complaint contained two counts—the first charging the defendant with having cut down, carried off and destroyed certain trees

of the plaintiffs of the value of $500, growing and being upon the aforesaid premises in which (as alleged) the plaintiffs owned a vested estate in fee on the death of Mary Van Deusen, and with having taken and carried away the same and disposed thereof to his own use; the second alleging that on the 1st day of November, 1853, and afterwards, the defendant forcibly, and contrary to the provisions of the statute entitled "Of trespass upon lands," did cut down and carry off, without and against the leave and consent of the plaintiffs, the owners thereof, divers trees of the value of $300, being and standing on the lands of the plaintiffs, known as the Lawrence Van Deusen farm, and also did girdle and despoil other trees standing and being on said lands, whereby the said farm belonging to the plaintiffs had been greatly damaged and lessened in value to the amount of $500, whereby the defendant had forfeited treble the damages sustained by the plaintiffs, and they therefore claimed to recover $2400, besides costs of the action. The defendant denied, substantially, the allegations of the complaint, and justified under the contract above referred to; alleged that the cutting of the wood and timber was necessary for the reparation and improvement of the premises, and was done with the assent and knowledge of Mary Van Deusen and the plaintiffs; that on the 1st day of May, 1854, the defendant was ready to fulfill the contract and receive the deed, but Mary Van Deusen and the plaintiffs refused to fulfill, and violated the agreement, whereby the defendant became entitled to $500, the liquidated damages stipulated in the contract, for non-performance; that a considerable portion of the trees and timber were cut into rails and other materials for the improvement of the farm, and were left by him upon the premises when he was compelled to quit the same, about the 1st of May, 1854, and the plaintiffs now have possession thereof and claim to own the same; that the defendant expended on said premises large sums of money in the repairing and improvement thereof, in setting out and transplanting fruit and other trees, in erecting fences and re-

Van Deusen *v.* Young.

pairing buildings, to the amount of $1000, and increasing the value of the premises to that amount; that said expenditures were made in good faith, and that the plaintiffs have obtained the benefit thereof by preventing the fulfillment of the agreement and taking possession of the premises.

A large amount of testimony was taken upon both sides, principally on the question of damages; the plaintiffs' witnesses, in general, testifying that the acts of the defendant resulted in heavy damage to the premises, in amounts varying from $300 to $500, and the defendant's witnesses stating that they were not any damage, but an advantage and improvement to the premises. The number of witnesses upon this subject was nearly balanced, and the referee reported the single damages at $150. Various objections to the plaintiffs' testimony were taken, the principal of which were aimed at the admission of testimony offered by the plaintiffs to show the difference in value of the premises in consequence of cutting down and carrying off the wood and timber in question; which objections were overruled by the referee, and the defendant excepted. A motion was afterwards made to strike out the testimony admitted under this objection and denied, and an exception taken. The defendant also moved for a nonsuit on the grounds, 1st. That the plaintiffs were not, but the defendant was, in possession at the time of the alleged trespasses. 2d. That no title was shown in the plaintiffs or in their ancestor, Mr. Van Deusen. 3d. That the defendant's acts were not wrongful but lawful, and done while in possession of the premises. 4th. That the plaintiffs were not entitled to prosecute the action jointly, and that Stephen was not a devisee. 5th. That the share of Mrs. Hendrickson did not descend to the plaintiffs, and that the action, if sustainable, should be brought also in the name of Mrs. Hendrickson, who was a necessary party plaintiff. 6th. That a joint action did not lie, but the remedy was by a several suit by each plaintiff. The referee denied the motion, and the defendant excepted. The defendant then moved to dismiss the

complaint as to Stephen, on similar grounds, and also for
want of title in him as remainderman or otherwise; also, as
to Lawrence, jun. on the ground of acquiescence in the de-
fendant's acts.   These motions were severally denied, and the
defendant in each case excepted.   A motion was also made
and refused (and exception taken) to strike out the testimony
under the statutory count, for want of allegations of special
or sufficient damage therein.   The referee reported that Mary
Van Deusen was entitled to a life estate in the premises, and
the plaintiffs to the inheritance, in fee ; that the parties failed
to comply with the written agreement, and on the 1st of May,
1854, it was terminated, and the defendant removed from the
premises and had never resumed possession; that the defend-
ant cut and removed standing trees, the timber of which
when cut amounted to 82 cords; that the damage actually
done by the defendant amounted to $150, which he trebled,
and reported in favor of the plaintiffs for $450 besides costs.
No exceptions appear to have been taken to this report.   The
cause was submitted on printed points, by

*L. Tremain,* attorney general, for the plaintiffs.

*John K. Porter* and *Deodatus Wright,* for the defendant.

*By the Court,* HOGEBOOM, J.   The principal question to be
determined in this case is, whether this action can be sus-
tained under the provisions of the statute " Of trespass on
lands." (2 *R. S.* 338, § 1.)   The defendant claims that it
cannot be :   1. Because the provisions of the act are designed
only to embrace parties who have a present estate in posses-
sion in the premises, and not remaindermen.   2. Because they
are designed to embrace only cases of actual trespass, and this
is not of that character.   3. Because the suit is defective on
account of an excess, as well as a defect of parties.   4. Be-
cause various objections to the admissibility of evidence, and
to the rule of damages, were improperly overruled.

I. It is plain that the recovery was had under the statute in question. The referee reports *treble* damages, and the second count is framed nearly in the words of the statute. It is unnecessary to consider whether the fact that of the two counts in the complaint, only one is framed under the statute, is fatal to the award of treble damages, (*Mooers* v. *Allen,* 2 *Wend.* 247,) because no such objection was taken at the trial; and if taken, the irregularity, if any, might there have been corrected. I think, also, the allegation of damage in the second count sufficiently full, specific and special to let in all legitimate evidence of damage; at least all that was admitted at the trial, if it be otherwise free from objection. Nor do I think that the provisions of the act (2 *R. S.* 338, § 1) were intended exclusively for the benefit of persons having a present estate in possession. The words of the act are broad and comprehensive, and secure the damages to the *owner* of the land—the person whose estate or property is injured. The character of the injury therein mentioned is an injury to the *inheritance*—to the party who has the estate *in fee.* If there were any doubt upon this question, it would seem to be removed by the provisions of section 8 of title 5 of chapter 1 of part 2 of the revised statutes, (1 *R. S.* 750, § 8,) which are as follows : "A person seised of an estate in remainder or reversion, may maintain an action of waste or trespass for an injury done to the inheritance, notwithstanding any intervening estate for life or years." The fact, therefore, of the subsisting estate for life in Mary Van Deusen presents no insuperable obstacle to the action.

II. What cases, upon the merits, or judged by the intrinsic character of their facts, are embraced within the statute? *Literally* it extends to *every person* who shall cut down or carry off any wood, trees or timber, or girdle or despoil trees on the land of any other person, without the leave of the owner thereof. The statute, however, is entitled "Of trespass on lands," and the section in question says the offending party shall forfeit and pay treble the amount of damages

which shall be assessed therefor in an action of *trespass.* It would seem, therefore, to be necessary that the acts complained of should be essentially acts of trespass—acts for which an action of trespass would formerly lie. They must be forcible, unlawful and unauthorized acts; they must be acts committed without license or permission of the owner. I do not think they need be acts preceded by an unlawful *entry* upon the lands, for the acts complained of, and for which damages are given by this statute, are not necessarily acts for which trespass *quare clausum fregit* would lie; but unlawful acts upon, and appropriations of, the property after an entry is made. This entry may be lawful or illegal, peaceable or forcible, but the lawful and peaceable character of the entry does not necessarily impart the same character to the subsequent proceedings. The question should be treated as one of substance, and not of mere form; and if the essential character of the act is wrongful, illegal and forcible, it has all the substantial elements of an act of naked trespass, and should be treated and condemned as such. It is said, however, that there is another statute—that of *waste*—which applies to cases of a possession lawfully acquired, and subsequently abused by acts of waste or injury to the inheritance, and that in this case the defendant's possession was clearly lawful, as having the written authority of the tenant for life for its support, as contained in the terms of the contract, and that therefore the action, if it lies at all, must be under the statute "Of waste," and not that "Of trespass on lands," they being in their nature entirely distinct. For the statute "Of waste," see 2 *R. S.* 334. It is to be observed that the remedy for waste is not restricted to cases of injury to the inheritance committed by persons having an intervening estate, as for life or for years, but applies also to a person in possession after his property is sold upon execution, and even to a trespasser against whom an action of ejectment is pending for the recovery of the property. (2 *R. S.* 336.) The *nature* of the act committed is also, or may be, widely different in the

Van Deusen *v.* Young.

two cases. There is many an act of trespass which would not amount to an act of waste. (*Kidd* v. *Dennison,* 6 *Barb.* 9. *Harder* v. *Harder,* 26 *id.* 409.) Again; the character and object of the remedies are different. In the case of waste, the judgment is that the plaintiff recover the *place wasted,* as well as treble damages. (2 *R. S.* 335, § 5.) It does not necessarily follow, therefore, that in all cases of injury to the inheritance the action must be *waste,* where the defendant is a tenant for life or years; nor that it must be *trespass* where he is not. I am not able to see why there may not be cases in actions against a tenant for life or years, in which a recovery could be had under the statute "Of trespass on lands." But assuming it to be otherwise, it seems quite clear that the defendant, though in possession under the tenant for life, did not have the entire estate, and was not entitled to all the rights and privileges of the tenant for life. He had the possession, in part or altogether, and the "privilege to do what work he might deem fit or necessary to be done on the farm." This was not by any means investing him with all the rights of the tenant for life, nor did it authorize him to do all those acts of cutting wood or clearing away forests, which in some cases a tenant for life may do without committing waste. He had paid nothing upon the purchase; he was permitted to occupy the land rather as a privilege than a right; not to enter upon it as owner, but to have a temporary possession, with a view to prepare for its permanent and advantageous occupancy when he should become the rightful proprietor. And notwithstanding the cases of *Van Wyck* v. *Alliger,* (6 *Barb.* 507,) and *Rood* v. *N. Y. & Erie Rail Road Co.* (18 *id.* 80,) I cannot assent to the doctrine that a party in possession without a deed, and who has paid nothing upon his contract of purchase, is to be treated in all respects as a vendee or equitable owner, or so, even as to the right to cut wood or timber. It is, in my opinion, a doctrine fraught with dangerous consequences to the real owner. It may seriously impair his security, and even destroy the value of his property. And

if, as in this case, the contract is subsequently not performed, or is abandoned, the real owner may be without remedy for flagrant acts of waste or of trespass.

When, therefore, the contract was terminated without a consummation by deed, and it does not distinctly appear and is not found by the referee, whether it was by mutual consent or mutual fault, or which party committed the fault, the parties were, I think, remitted to their original rights, and the defendant was bound to respond for the injuries committed. And if he was not responsible under the statute in question, I am not sure that he was responsible at all—a result which would be most unjust.

It is now claimed that the referee has failed to find the facts which are essential to uphold the award of treble damages, to wit, that the trespass was not casual or involuntary; or was committed under the mistaken supposition, for which there was probable cause, that the defendant was the owner of the land. (2 *R. S.* 338, § 2. *Newcomb* v. *Butterfield,* 8 *John.* 342.) But these are exceptions which it belonged to the defendant to establish, rather than to the plaintiff to negate, and perhaps the referee has substantially negatived them by reporting affirmatively the circumstances under which the act was done. Besides, it is apparent from the evidence in the case that the defendant did not place himself within either of those exceptions, and we are able to see, therefore, that if the referee was right in awarding damages at all, it was a case for treble damages. If there was doubt on this question, the defendant should have procured a report from the referee upon that point. As to the conclusion of the referee that the plaintiffs had sustained single damages to the amount of $150, there is plainly evidence to warrant his finding for even a larger amount; and although there is much evidence to the contrary also, yet it is clearly a case of conflicting and nearly balanced evidence, and the finding on the question of fact is practically conclusive.

III. The defendant also raises a question of parties. As

Van Deusen *v.* Young.

to the non-joinder of the widow, it is disposed of by the failure to present it by demurrer or answer. As to Stephen being an improper party, we think he was not, being in fact owner of the premises, and the fact is so found by the referee. As to Lawrence, jr., being an improper party, we think there is no such acquiescence or estoppel as forbids his uniting in the action. As to the suit being properly several, and not joint, we think the objection untenable. They are all owners, and jointly interested. The injury is to their common property, and the damage is common to all. They derive title from a common ancestor, and all together represent the estate which he had in his lifetime, and for an injury to which they may be regarded as his proper representatives. This is one of those cases where tenants in common may and ought to join. (6 *Bacon's Abr. title Joint Tenants and Tenants in Common, K. Low* v. *Mumford,* 14 *John.* 426. *Decker* v. *Livingston,* 15 *id.* 479.)

IV. It only remains to consider the objections to testimony. They are all substantially similar, to wit, that evidence of the comparative value of the premises with or without the wood and timber was improper: 1st. As furnishing no appropriate criterion of damage; and 2d, as founded on merely speculative opinion of the witnesses. But I think it was the proper test of an injury to the inheritance. (*Harder* v. *Harder,* 26 *Barb.* 409.) It was the test set up in the complaint, and established the amount of injury which the plaintiffs had sustained, better and with a nearer approach to accuracy, I think, than any other standard that could be adopted. At least it was not an improper mode of estimating the damages. Surely the damage would not be in all cases accurately measured by the market value of the wood or timber when cut. The trees might be a highly valuable appendage to the farm, for purposes of shade or ornament; there might be a very scanty supply for a farm of that size; or for other reasons they might have a special value as connected with the farm, altogether independent of, and superior to, their intrinsic value

for purposes of building or of fuel. As well might you remove the columns which supported the roof or some part of the superstructure of a splendid mansion, and limit the owner in damages to the value of these columns, as timber or cord wood, as to adopt the parallel rule in this case.

In arriving at a conclusion on this question of value, opinions of witnesses must necessarily be resorted to. Questions of value are always more or less questions of opinion. They are always resorted to in actions for breach of warranty of soundness to test the value between a sound and unsound animal; and so far as I know, the rule is universal, and without exception in all cases touching the value of any species of property, after a proper foundation is first laid by showing the acquaintance of the witness with this species of property. (*Lamoure* v. *Caryl*, 4 *Denio*, 370. *Joy* v. *Hopkins*, 5 *Denio*, 84.)

This was done, so far as I have observed, in every instance in the case before us. It was not indispensable that the witness should be a farmer. If he was a laborer, or a merchant, or a cooper, I suppose he was a competent witness to speak on this question, if acquainted with this property and with the value of lands in the neighborhood. There is no special science about the matter, which should limit the inquiry to eminent experts. In a single instance the question put *assumed* that the cutting and removal of the wood would diminish the value of the farm, and the inquiry was how much less it would be worth on that account. In strictness, the question was slightly objectionable; but it obviously did not mislead the witness, and resulted in no practical injury to the defendant, it being apparent from the residue of the examination of the witness, that in his estimation the diminution in value was serious and substantial. I do not think the judgment should be reversed for so slight an error, if it be one: the whole case demonstrating that it could have resulted in no detriment to the defendant. In one case also, it was assumed, as a part of the question, that the wood or timber

Van Deusen *v.* Young.

cut had been or would be taken by the defendant, and the defendant renewed the objection. In this I think there was an error. There had been evidence that some of the wood had been removed by the defendant; but independent of that, the plaintiff had a right to take the witness' estimate of value or damage upon that assumption; and if, in point of fact, contrary to the legal presumption, the wood cut by the defendant was not removed by him, the defendant could show that in diminution of the damages. And no injury could happen to the defendant; for if the plaintiff's recovery was based on the assumption that the wood was taken by the defendant, the effect of the recovery would be to vest title thereto in him.

Various cases are cited on the defendant's points to show that it is incompetent to ask the witness the direct question how much *damage* has been inflicted upon or sustained by the aggrieved party; or how much has accrued to him from a particular source. But this is a very different inquiry from those propounded to the witnesses in the case in hand; and in several instances, in the adjudicated cases, the objectionable character of the question is founded upon the tenacity of the examining counsel in persisting in a peculiar mode of putting the interrogatory. (*See Giles* v. *O'Toole,* 4 *Barb.* 261; *Fish* v. *Dodge,* 4 *Denio,* 312; *Merritt* v. *Seaman,* 2 *Selden,* 168; *Morehouse* v. *Mathews,* 2 *Comst.* 514; *Norman* v. *Wells,* 17 *Wend.* 137; *Harger* v. *Edmonds,* 4 *Barb.* 256.)

The following authorities will be found, I think, in substance to sustain the interrogatories to which exception was taken in this case: *De Witt* v. *Barley,* 5 *Selden,* 371. *Lincoln* v. *Saratoga and Schenectady R. R. Co.* 23 *Wend.* 425. *Clark* v. *Baird,* 5 *Selden,* 183. *Westlake* v. *St. Lawrence Mut. Ins. Co.* 14 *Barb.* 206. *Cowen & Hill's Notes,* 700. *Lamoure* v. *Caryl,* 4 *Denio,* 370.

I have thus reviewed all the material questions suggested on the written points, with as much care and skill as I have been able to command, without the benefit of an oral argu-

ment, and my conclusion is, that substantial justice has been done, and that the judgment of the court below should be *affirmed.*

[ALBANY GENERAL TERM, September 6, 1858. *Wright, Gould* and *Hogeboom,* Justices.]